UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT COHEN, | CASE NO. 11-5491 RJB |
| Plaintiff, | ORDER ON DEFENDANTS ANDRE ZALOZH AND CRESA'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| SEAN BOYLE, LINDA HAYES; DAVID MILLER; ANDRE ZALOZH; THE CLARK COUNTY SHERIFF'S OFFICE, CLARK COUNTY WASHINGTON, AND CLARK REGIONAL EMERGENCY SERVICES AGENCY, | |
| Defendants. | |

This matter comes before the Court on Defendants Andrey Zalozh and Clark Regional Emergency Services Agency's ("CRESA") Motion for Summary Judgment.  Dkt. 48.  The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

This civil rights case arises from a 9-1-1 call that Plaintiff was suicidal and the Defendants' subsequent visit to his home.  Dkt. 1.  Plaintiff alleges that Defendants violated his

1  Fourth and Fourteenth Amendment rights and also makes claims under state law.  Dkt. 1.

2       In the pending motion, Defendants Zalozh, a 9-1-1 dispatcher, and his employer CRESA,

3  a municipal agency that provides dispatching services for Clark County, Washington, seek

4  summary dismissal of Plaintiff's claims against them.  Dkt. 48.  For the reasons below, their

5  motion should be granted.

6  **I.      FACTS AND PROCEDURAL HISTORY**

7  **A.  RELEVANT FACTS**

8      The facts and procedural history are contained in the April 16, 2012, Order on Plaintiff's

9  Motion for Partial Summary Judgment (Dkt. 52, at 1-11) and are adopted here.  For ease of

10  reference, some of them will be repeated here.

11       Around 9:00 in the evening of May 30, 2010, CRESA dispatcher Andre
Zalozh, and Defendant here, took a call on the 9-1-1 line.  Dkts. 43-1, at 2 and 43-

12  2, at 2.  The caller was Plaintiff's son, Jon Cohen-Doyle.  Dkt. 43-2, at 4.  In the
recorded conversation, Mr. Cohen-Doyle told dispatcher Zalozh that he called to

13  talk with his father around five minutes ago, and his father said that he was going
to kill himself.  Dkt. 43-2, at 5.  Dispatcher Zalozh asked him if Plaintiff had ever

14  made threats in the past, and Mr. Cohen-Dolye responded, "[h]e's tried to do it
before, yeah."  Dkt. 43-2, at 5.  Mr. Cohen-Dolye told dispatcher Zalozh that he

15  "took pills and stuff" last time.  Dkt. 43-2, at 5.  Mr. Cohen-Dolye stated that he
did not know if his dad had taken any pills that night.  Dkt. 43-2, at 5.  When

16  asked if Plaintiff had any weapons in the house, Mr. Cohen-Dolye responded,
"no."  Dkt. 43-2, at 6.  Dispatcher Zalozh asked, "did he make a specific threat

17  tonight as to how he was going to do it?"  Dkt. 43-2, at 7.  Mr. Cohen-Dolye
answered, "[h]e just told me that he was already - - he was already going to kill

18  himself tonight."  Dkt. 43-2, at 7.
     In response to the call, dispatcher Zalozh sent members of the Clark County

19  Sheriff's Office to Plaintiff's house.  Dkt. 43-1, at 2.  Defendant Deputies Sean
Boyle and David Miller and Sergeant Linda Hayes responded.  *Id*.

20      As Deputy Boyle was headed to Mr. Cohen's home, his understanding of the
situation was that "the subject's son was calling and said he was going to kill

21  himself."  Dkt. 42-2, at 14.  He also knew that "medication" was involved –
"either the son told dispatch he said he took a bunch of pills or dispatch told us

22  that [Plaintiff] said he had ingested some pills."  Dkt. 42-2, at 118.
     By the time he arrived, Deputy Miller was aware that there was "a third party

23  complaint made by his son that [Plaintiff] was . . . threatening suicide by overdose
of medications; that he had been drinking, that there were some dogs in the house;

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 2

1 | and that he perhaps might somehow turn the dogs on us if we came into the house." Dkt. 42-3, at 18.

2 | Sgt. Hayes, a supervisor at the Clark County Sherriff's office, felt that she should also respond. Dkt. 42-1, at 10. When she got to the house, she was aware

3 | that Plaintiff's son called for help regarding his father's potential suicide. Dkt. 42-1, at 10. She knew that Plaintiff had attempted suicide in the past. Dkt. 24-1,

4 | at 27. Sgt. Hayes knew both Plaintiff and Plaintiff's son due to her past work as a school resource officer. Dkt. 42-1, at 10, and 16-17. While she was a school

5 | resource officer, Sgt. Hayes spent time "hunting [Plaintiff's son] down" after he had run away from home, and getting him to court, or wherever else he needed to

6 | go. Dkt. 42-1, at 16-17. She knew that Plaintiff's son was "troubled" and would steal items from his father. Dkt. 42-1, at 16-17. Sgt. Hayes also felt that Plaintiff

7 | was "very sad" over his son's behavior. Dkt. 42-1, at 17. She also felt that Plaintiff's son was not dishonest with her. Dkt. 42-1, at 18. Sgt. Hayes knew that

8 | Plaintiff had dogs, and that the officers needed to be careful because of the dogs. Dkt. 42-1, at 24.

9 | Once they arrived at the house, Sgt. Hayes stood by a tree in the front yard, Deputy Miller went to the front door, and Deputy Boyle opened the gate and went

10 | into the backyard. Dkts. 42-1, at 34, and 42-2, at 21. Plaintiff did not answer the officers' knocks at his door. Dkt. 39-5, at 5. Dispatcher Zalozh states that "[a]t

11 | the direction of the responding deputies," he called Plaintiff to relay information to the officers. Dkt. 43-1, at 2. While on the phone with Plaintiff, dispatcher

12 | Zalozh was also in radio contact with the responding deputies. Dkt. 43-2, at 3.

13 | In the recorded conversation, dispatcher Zalozh told Plaintiff that he was 9-1-1 dispatch, and asked Plaintiff how he was doing. Dkt. 43-2, at 11. Plaintiff stated, "I'm doing miserably." Dkt. 43-2, at 11. The recorded conversation

14 | proceeded:
MR. COHEN: I'm in my house, but don't send anybody.

15 | DISPATCH: Okay. And are you by yourself?
MR. COHEN: I have my three dogs.

16 | DISPATCH: Okay. All right. And why are you doing miserably, what's going on?

17 | MR. COHEN: Oh, my son's a thief, a liar, a cheat, a no-good person. He's mentally ill. He needs lots of help.

18 | . . . .
DISPATCH: Uh-huh. Do you have any guns or knives with you right now?

19 | . . . .
Mr. COHEN: No. I don't believe in guns or knives.

20 | DISPATCH: Okay. All right. I do have a few deputies outside. Can you come out and talk to them real quick?

21 | MR. COHEN: No, I don't want to.
DISPATCH: Okay. Why not?

22 | MR. COHEN: Because I would like to die.
DISPATCH: So how would you do that if you would do it?

23 | MR. COHEN: Oh, I have lots of drugs.
DISPATCH: Okay. One moment. Okay? One moment.

24 |

1    MR. COHEN: Tell 'em not to come in.  I've got three big dogs here.  Not
      dangerous dogs, but three dogs who might get all excited if somebody came in.
2    And I don't really care you know.  My son probably called you, but, you know,
      he's the big problem.  He's nothing worth any more life than me.
3    DISPATCH: Okay.  Have you ever tried to commit suicide in the past?
      MR. COHEN:  I've tried.
4    DISPATCH:  Okay.
      MR. COHEN: I'm just drunk right now.
5    DISPATCH:  How much have you had to drink?
      MR. COHEN:  A bottle of wine.
6    DISPATCH:  Okay.
      MR. COHEN:   Tell 'em to -- to -- to go away.
7    DISPATCH:  Okay.  One moment.
      MR. COHEN:  You hear my dogs; they' re not happy.
8    DISPATCH: Would they attack officers or anything?
      MR. COHEN:  No.
9    DISPATCH:  No?
      MR. COHEN:  No.  They' re nice dogs.  They'd jump up on 'em and they'd lick
10   'em.
      Dkt. 43-2, at 11-13.  Dispatcher Zalozh states that when Plaintiff first told him he
11   had "three big dogs here," he immediately relayed to the deputies that Mr. Cohen
      was "threatening you that he's going to release his dogs."  Dkt. 43-1, at 2.  He
12   "interpreted Mr. Cohen's comments about his dogs as a threat to the deputies."
      Dkt. 43-1, at 2.  Dispatcher Zalozh states that after Plaintiff told him the dogs
13   would not attack the officers, he reported to the deputies that Mr. Cohen was now
      "saying the dogs are not harmful and they will jump and lick you."  Dkt. 43-1, at
14   2.  Dispatcher Zalozh told the deputies that he could hear the dogs growling and
      "that they sounded aggressive" to him.  Dkt. 43-1, at 2-3.  The conversation
15   between the Plaintiff and dispatcher Zalozh continued:
      MR. COHEN: But tell 'em I don't want to go.  I don't want to go to a psychiatric
16   ward.  I don't want anything like that. . . . It won't do any good, so there is no
      point.
17   . . . .
      DISPATCH:  Okay.  Well, they just want to contact you and make sure that you
18   are okay.  It's not going to do great harm, you know, if you just open the door and
      just talk to them real - - -
19   MR. COHEN:  No.  They could arrest me and throw me in the psychiatric ward.
      Dkt. 43-2, at 14.  Sgt. Hayes states that at this point, she felt there was a mental
20   health emergency.  Dkt. 42-1, at 28.  She knew Plaintiff was inebriated and felt
      "he could have ingested anything."  Dkt. 42-1, at 28.  Sgt. Hayes, in response to
21   hearing that Plaintiff refused to come to the door, testified that she "used a ruse
      saying 'come to the door or we'll have to break down his door.'"  Dkt. 42-1, at
22   43.  Dispatcher Zalozh followed her directive and told Mr. Cohen the deputies
      will "'break down his front door' if they have to."  Dkt. 43-1, at 3.  The transcript
23   of the recorded call states:
      VOICE: (Inaudible) we will break down his front door.
24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 4

1
    MR. COHEN:  And I don't want 'em to do that because I am not crazy.
    DISPATCH:  Okay.  Robert, they will contact you whether you like it or not, so

2
    we can do it, like, peacefully where you come out and talk to them or they will
    just break your door and they will talk to you.  But either way, they have to talk to

3
    you in person.  So it's going to be a lot more expensive for you if they would have
    to break down your door.

4
    MR. COHEN:  All right. I'll go talk to them.
    DISPATCH:  You'll go talk to them?

5
    MR. COHEN:  Yes. . . I can barely walk.
    Dkt. 43-2, at 13-15.

6

7
Dkt. 52, at 2-6.  Dispatcher Zalozh then says, "Okay.  I'll stay with you on the phone and I'll tell

8
'em you're coming and they'll wait for you.  Just take your time.  Okay?"  Dkt. 39-1, at 45.  Mr.

9
Cohen states, "All right.  All right.  All right. All right.  Be quiet.  Do not touch my dogs.

10
(Inaudibles) They like people."  Dkt. 39-1, at 45.  Dispatcher Zalozh states that at that point, it

11
sounded like Mr. Cohen was talking with deputies at his doorway, and so disconnected from the

12
call.  Dkt. 43-1, at 3.  Plaintiff states that the recording sounds like it "suddenly cuts off."  Dkt.

13
58.

14
       Plaintiff, the non-moving party, alleges that the details of what happen next are in

15
dispute.  In any event, what is not in dispute is that the officers entered his home, a struggle

16
ensued, one of Plaintiff's dogs was shot, and Plaintiff was taken into custody for a mental health

17
evaluation.  Dkt. 44.  He was eventually released.  *Id.*

18
       On August 18, 2010, Plaintiff's investigator requested, on his behalf, all 9-1-1 tapes and

19
radio audio tapes between the Clark County Sheriff's Office and CRESA relating to the May 30,

20
2010 incident.  Dkt. 59-7, at 2-3.  On September 9, 2010, the investigator inquired about the

21
request.  *Id.*  CRESA allegedly responded that, "[i]ncoming calls we keep for 180 days and radio

22
traffic for 90 days," and that "the system automatically deletes the recordings."  *Id.*  So,

23
according to Plaintiff, CRESA's 90-day retention period had not expired when he originally

24
made his request, but on or after August 23, 2010, CRESA destroyed the relevant radio calls.  *Id.*

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 5

1   **B.  PROCEDURAL HISTORY**

2       On June 28, 2011, Plaintiff filed this case.  Dkt. 1.  In his Amended Complaint, he makes

3   claims against the individual Defendants pursuant to 42 U.S.C. § 1983 for violation of his rights

4   under the Fourth and Fourteenth Amendments to the U.S. Constitution, including for "the

5   warrantless entry into his home, the unreasonable seizure of his person and effects (companion

6   dog), use of excessive force, and his arrest and detention without probable cause."  Dkt. 28, at

7   13.  He makes claims against the Clark County Sherriff's Office for violation of his rights

8   against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the

9   U.S. Constitution.  *Id.*  Plaintiff additionally makes claims for outrage, violations of

10  Washington's Public Records Act, RCW 42.46 *et. seq.*, and for "destruction of evidence."  Dkt.

11  28, at 13-14.  Plaintiff seeks damages, injunctive relief, attorneys' fees, and costs.  Dkt. 28, at 14-

12  15.

13      Plaintiff's Motion for Partial Summary Judgment on his Fourth Amendment claims for the

14  officers' warrantless entry into his home and his seizure for a mental health evaluation was

15  denied because Plaintiff failed to show that there were no material issues in dispute and that he

16  was entitled to a judgment as a matter of law.  Dkt. 52.

17      Discovery is being conducted.  Dkt. 61.  Trial is set to begin on August 20, 2012.  Dkt. 21.

18  **C.  PENDING MOTION**

19      In the pending motion, dispatcher Zalozh and CRESA move for summary dismissal of

20  Plaintiffs' claims arguing that: 1) dispatcher Zalozh is entitled to qualified immunity as to

21  Plaintiff's Fourth Amendment claims for entering his home without a warrant or legal cause, the

22  unreasonable seizure of his person and effects (companion dog), use of excessive force, and

23  arrest and detention without probable cause; 2) the claim for outrage asserted against both

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 6

1   dispatcher Zalozh and CRESA should be dismissed because dispatcher Zalozh's alleged conduct

2   was not "extreme or outrageous;" and 3) Washington does not recognize a cause of action for

3   damages for alleged destruction of evidence and so that claim should be dismissed.  Dkts. 48 and

4   62.

5       Plaintiff does not oppose the motion regarding his claims against dispatcher Zalozh and

6   CRESA for excessive force and outrage so long as the Defendant officers do not assert that

7   dispatcher Zalozh's "fabricated threat" that Plaintiff would direct his dogs to attack them,

8   "increased their perceived risk to officer safety." Dkt. 58, at 11-12.  Accordingly, those claims

9   should be dismissed.

10      Plaintiff opposes the motion regarding his remaining Fourth Amendment claims arguing that:

11   1) the Court has ruled that there are issued of fact that preclude summary judgment as to whether

12   his consent to allow the officers into his home was valid, 2) dispatcher Zalozh participated in the

13   entry and seizure of Plaintiff by communicating the threat on the phone, 3) dispatcher Zalozh

14   caused the unconstitutional entry by providing incomplete information to the officers, 4) the

15   Defendants do not claim that he was in immediate need of assistance, and Plaintiff's evidence

16   shows that he was not, and so 5) dispatcher Zalozh is not entitled to qualified immunity on the

17   remaining Fourth Amendment claims.  Dkt. 58.   Plaintiff argues that his claim for negligent

18   destruction of 9-1-1 recordings should not be dismissed.  *Id.*

19   **D.  ORGANIZATION OF OPINION**

20      This opinion will first address the motion to summarily dismiss Plaintiff's Fourth

21   Amendment claim, asserted against dispatcher Zalozh, and then will address the spoliation of

22   evidence claim asserted against CRESA.

23

24

1                                II.       **DISCUSSION**

2       **A. SUMMARY JUDGMENT STANDARD**

3              Summary judgment is proper only if the pleadings, the discovery and disclosure materials

4       on file, and any affidavits show that there is no genuine issue as to any material fact and that the

5       movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

6       entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

7       showing on an essential element of a claim in the case on which the nonmoving party has the

8       burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

9       of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

10      for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

11      (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

12      metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

13      material fact exists if there is sufficient evidence supporting the claimed factual dispute,

14      requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

15      *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

16      *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

17             The determination of the existence of a material fact is often a close question.  The court

18      must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

19      e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

20      *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

21      of the nonmoving party only when the facts specifically attested by that party contradict facts

22      specifically attested by the moving party.  The nonmoving party may not merely state that it will

23      discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 8

1 to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

2 Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

3 be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. FOURTH AMENDMENT CLAIMS ASSERTED AGAINST DISPATCHER ZALOZH UNDER § 1983 AND QUALIFIED IMMUNITY

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

conduct complained of was committed by a person acting under color of state law, and that (2)

the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other

grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to

remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769

F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

Defendants in a Section 1983 action are entitled to qualified immunity from damages for

civil liability if their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815

(2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances

two important interests: the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 815. The existence of

qualified immunity generally turns on the objective reasonableness of the actions, without regard

to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable

officer could have believed his or her conduct was proper is a question of law for the court and

should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*,

988 F.2d 868, 872-73 (9th Cir. 1993).

1    In analyzing a qualified immunity defense, the Court determines: (1) whether a

2  constitutional right would have been violated on the facts alleged, taken in the light most

3  favorable to the party asserting the injury; and (2) whether the right was clearly established when

4  viewed in the specific context of the case. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).  "The

5  relevant dispositive inquiry in determining whether a right is clearly established is whether it

6  would be clear to a reasonable officer that his conduct was unlawful in the situation he

7  confronted." *Id*.  While the sequence set forth in *Saucier* is often appropriate, it should no longer

8  be regarded as mandatory. *Pearson v. Callahan*, at 129 S.Ct at 811.  "The judges . . . should be

9  permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

10  immunity analysis should be addressed first in light of the circumstances in the particular case at

11  hand." *Id*.

12    Plaintiff's Motion for Partial Summary Judgment on his Fourth Amendment claims for

13  warrantless entry and unreasonable seizure was denied because Plaintiff failed to show that there

14  were no material issues in dispute and that he was entitled to a judgment as a matter of law.  Dkt.

15  52.  Although the Plaintiff argues that the Court has held that summary judgment is precluded on

16  these issues, the holding was that Plaintiff had not carried his burden and so could not be granted

17  judgment summarily on his claim.  *Id.*  In an effort to fully consider the other Defendants'

18  positions on these issues, for the purposes of this motion, the second prong in the *Saucier*

19  analysis is useful in examining whether Plaintiff's Fourth Amendment claims for the warrantless

20  entry into his home and detention for a mental health evaluation, asserted against dispatcher

21  Zalozh, should be dismissed.

22        *1.  Relay of Threat and the Officers' Subsequent Entry into the Home – Clearly*
             *Established Violation by Dispatcher Zalozh?*

23

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 10

1        The Fourth Amendment to the U.S. Constitution guarantees, "[t]he right of the people to

2 be secure in their persons, houses, papers, and effects, against unreasonable searches and

3 seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." "A

4 warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth

5 Amendment warrant requirement applies, such as emergency, exigency, or consent." *Espinosa*

6 *v. City and County of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010).  The Fourth

7 Amendment, however, "has drawn a firm line at the entrance to the house." *Payton v. New York*,

8 445 U.S. 573, 590 (1980).

9        Dispatcher Zalozh's motion to summarily dismiss Plaintiff's Fourth Amendment claims

10 against him for the officers' entry into the house should be granted.  Plaintiff cites no authority

11 establishing that it would be clear to a reasonable dispatcher that his conduct was unlawful in the

12 situation with which Zalozh was confronted. *Saucier,* at 2156.  Viewing the evidence in a light

13 most favorable to Plaintiff, Plaintiff's son called 9-1-1 and reported to dispatcher Zalozh that

14 Plaintiff was threatening to do himself harm that night, and had attempted to do so in the past by

15 taking pills. Dkt. 43-2, at 2-7.  Dispatcher Zalozh sent officers to respond. Dkt. 43-1.  He was in

16 radio contact with the officers and, at the officers' request, contacted Plaintiff by phone.  Dkt.

17 43-1.  After Plaintiff told dispatcher Zalozh that he was "miserable," dispatcher Zalozh told

18 Plaintiff he had a few deputies outside and asked if Plaintiff would come out and talk with them.

19 Dkt. 43-2, at 11-13.  Plaintiff said "no," and when asked "why?" Plaintiff stated "[b]ecause I

20 would like to die." *Id*.  Dispatcher Zalozh then asked, "[s]o how would you do that if you would

21 do it?" Plaintiff responded, "[o]h, I have lots of drugs." *Id*.  Plaintiff further acknowledged to

22 Dispatcher Zalozh that he had tried to commit suicide in the past by taking pills and that he had

23 consumed a bottle of wine that night. *Id*.  At this point, Defendant Sgt. Linda Hayes states that

24

1  she felt there was a mental health emergency.  Dkt. 42-1, at 28.  She knew Plaintiff was

2  inebriated and felt "he could have ingested anything."  Dkt. 42-1, at 28.  Sgt. Hayes, in response

3  to hearing that Plaintiff refused to come to the door, testified that she "used a ruse saying 'come

4  to the door or we'll have to break down his door.'"  Dkt. 42-1, at 43.  Dispatcher Zalozh

5  followed her directive and told Mr. Cohen the deputies will "'break down his front door' if they

6  have to."  Dkt. 43-1, at 3.  Plaintiff agreed to open the door, and when dispatcher Zalozh heard

7  him talking with the officers at the door, he disconnected the call.  Dkt. 43-1.  It is undisputed

8  that dispatcher Zalozh did not enter the house that night.  He passed on the officers' stated

9  intention to force the door open.  Even if the threat to break down the door was a hollow one,

10  there is no evidence that dispatcher Zalozh knew that.  Plaintiff maintains that it was dispatcher

11  Zalozh's role in the "ruse" that caused the later violations of his rights.  Dkt. 58.  Plaintiff,

12  however, fails to acknowledge that "[i]n some circumstances, officers can obtain an invitation to

13  enter a private place through a ruse in order to investigate criminal activity."  *U.S. v. Garcia*, 997

14  F.2d 1273, 1280 (9th Cir. 1993)(*citing Lewis v. United States*, 385 U.S. 206, 211(1966)).  For

15  example, "[a]n officer may, consistent with the fourth amendment, conceal his or her identity to

16  obtain an invitation to enter a suspect's home."  *U.S. v. Bosse,* 898 F.2d 113, 115 (9th Cir. 1990);

17  *but see United States v. Johnson*, 626 F.2d 753 (9th Cir.1980).  The officer may not, however,

18  acquire entry by "misrepresenting the scope, nature or purpose of a government investigation."

19  *Bosse*, at 115.  There is no evidence that the dispatcher Zalozh or the officers misrepresented

20  "the scope, nature or purpose" of their visit to Plaintiff's home that night.

21     Further, there is no evidence that dispatcher Zalozh knew that the officers were going to

22  enter the home.  The officers' relayed that they wanted to talk with Plaintiff to check on his

23  mental health, something that could have been accomplished on the porch.  Even assuming that

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 12

1   he knew that the officers were going to enter the house, Dispatcher Zalozh argues that he is

2   entitled to qualified immunity because it was objectively reasonable for him to believe that an

3   emergency aid situation was presented.  Dkts. 48 and 62.

4        "Under the emergency exception, an officer may enter a home without a warrant to

5   investigate an emergency that threatens life or limb if the officer has objectively reasonable

6   grounds to believe that an emergency exists and that his immediate response is needed."

7   *Espinosa,* at 534 (*internal citations omitted*).  Derived from police officers' community

8   caretaking function, this exception allows the police to enter a home when an emergency which

9   threatens physical harm is presented.  *Id.*  The officer must have an objectively reasonable belief

10  that the circumstances justify entry.  *Id*.

11       Even assuming that as a dispatcher he was an "active participant" in the officers'

12  warrantless entry, Dispatcher Zalozh's motion for summary dismissal of Plaintiff's Fourth

13  Amendment claim against him for the entry into his home that night should be granted.  Plaintiff

14  has failed to point to any authority which would give dispatcher Zalozh "fair warning" that his

15  role in the officers' entry into the home violated Plaintiff's clearly established rights considering

16  the events of the evening.  *Torres v. City of Madera,* 648 F.3d 1119, 1129 (9th Cir. 2011).  As

17  above, dispatcher Zalozh was unaware what, if any, pills, in addition to a bottle of wine, Plaintiff

18  had consumed.  If he had taken pills, dispatcher Zalozh did not know how long they would take

19  to effect Plaintiff or what kind of symptoms he would have.  Dispatcher Zalozh was not present

20  at the scene to observe Plaintiff's demeanor.  To the extent that he was connected with the

21  officers' decision to enter the home, a reasonable dispatcher in his place would have had "an

22  objectively reasonable belief that the circumstances justify entry."  *Espinosa,* at 534.

23

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 13

1    This holding does not conflict with the April 16, 2012, Order on Plaintiff's Partial Motion

2    for Summary Judgment. Dkt. 52. The prior order held that Plaintiff failed to carry <u>his</u> burden to

3    show that "there are no issues of fact as to whether there was an emergency situation" and that he

4    was entitled to a judgment as a matter of law. Dkt. 52, at 17-19. In so far as the entry into the

5    home is concerned, Plaintiff's Fourth Amendment claim against dispatcher Zalozh should be

6    dismissed because he has qualified immunity.

7        2.  *Seizure of Plaintiff – Clearly Established Violation by Dispatcher Zalozh?*

8    Dispatcher Zalozh's motion to summarily dismiss Plaintiff's Fourth Amendment claim

9    for his seizure and detention for a mental health evaluation should be granted. As stated in the

10   April 16, 2012, Order,

11           Under Washington law, a police officer has, 'the authority to take a person
             to a hospital for mental evaluation upon 'reasonable cause to believe that such
12           person is suffering from a mental disorder and presents an imminent likelihood of
             serious harm or is in imminent danger because of being gravely disabled.'"
13           *Luchtel v. Hagemann,* 623 F.3d 975, 979 (9th Cir. 2010)(*quoting* RCW
             71.05.150(4)).
14           In *Luchtel,* the Ninth Circuit found that police officers had reasonable
             cause to take a woman to the hospital for a mental health evaluation, and affirmed
15           the district court's dismissal of her Fourth Amendment claim. *Id.* In that case,
             calls to 9-1-1 reported that she was hiding under a car with her son, outside
16           screaming that someone was going to kill her, and that she was going to kill
             herself. *Id.* When the officers arrived, they learned that she was on drugs and was
17           hiding at a neighbor's house. *Id.* Once they made contact with her, she made
             paranoid comments and attempted to use the neighbor as a human shield. *Id.*
18
     Dkt. 52. While not as extreme as the woman in *Luchtel*, even when viewed in a light most
19
     favorable to Plaintiff, Dispatcher Zalozh had "reasonable cause to believe" that Plaintiff was
20
     suffering from a "mental disorder" and presented "an imminent likelihood of serious harm" or
21
     was in "imminent danger because of being gravely disabled" (*Luchtel,* at 979) considering the
22
     situation. This is particularly true as to dispatcher Zalozh because he was not present on the
23
     scene. (In Response to the Plaintiff's motion for partial summary judgment, the Defendant
24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 14

1  officers argued that, in part, Plaintiff's demeanor once they were in the house made them think

2  that he needed to be assessed by medical health professionals.)  The above analysis regarding

3  whether the situation was an emergency applies.  Considering all the circumstances, the Fourth

4  Amendment claim against dispatcher Zalozh, regarding the seizure of Plaintiff for a mental

5  health evaluation, should be dismissed because dispatcher Zalozh is entitled to qualified

6  immunity.

7              3.      *Conclusion*

8          Plaintiff's Fourth Amendment claims against dispatcher Zalozh should be dismissed.

9  Plaintiff has agreed to dismissal of the excessive force claim as against dispatcher Zalozh.

10  Dispatcher Zalozh is entitled to qualified immunity for his passing on the officers' stated

11  intention to break down the door, for dispatcher Zalozh's role in the officers' decision to enter

12  Plaintiff's home that night, and for dispatcher Zalozh's role in the officers' decision to detain

13  Plaintiff for a mental health evaluation.  Dispatcher Zalozh's motion should be granted.

14  **C.  STATE CLAIM FOR DAMAGES FOR THE DESTRUCTION OF 9-1-1**
    **RECORDINGS ASSERTED AGAINST CRESA**

15

16  "Spoliation is defined as the intentional destruction of evidence."  *Ripley v. Lanzer*, 152 Wn.

    App. 296 (2009).

17

18  Defendant CRESA's motion to dismiss Plaintiff's claim for the spoliation of evidence should

    be granted.  CRESA does not dispute that it deleted the requested records.  Plaintiff, however,

19

    has failed to point to any authority which supports his theory that this deletion of records is a

20

    recognized claim in Washington state for damages.  In Washington,

21

22          [W]here relevant evidence which would properly be a part of a case is within the
            control of a party whose interests it would naturally be to produce it and he fails
            to do so, without satisfactory explanation, the only inference which the finder of

23          fact may draw is that such evidence would be unfavorable to him.

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 15

1  *Pier 67, Inc. v. King County*, 89 Wash.2d 379, 385-86 (1977). To remedy spoliation the court

2  may apply that rebuttable presumption. *See Marshall v. Bally's Pacwest, Inc.*, 94 Wn.App. 372,

3  (1999). There is no claim remaining against CRESA or any of its employees to apply such a

4  presumption. Moreover, Plaintiff offers no evidence of bad faith. The claim against CRESA for

5  spoliation of evidence should be dismissed.

6                              **III.    ORDER**

7         Therefore, it is hereby **ORDERED** that:

8         • Defendants Andrey Zalozh and Clark Regional Emergency Services Agency's

9            Motion for Summary Judgment (Dkt. 48) is **GRANTED**;

10        • Plaintiff's claims against those defendants are **DISMISSED**.

11        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

12  to any party appearing *pro se* at said party's last known address.

13        Dated this 18th day of May, 2012.

14

15        _____

16        ROBERT J. BRYAN
          United States District Judge

17

18

19

20

21

22

23

24

ORDER ON DEFENDANTS ANDRE ZALOZH
AND CRESA'S MOTION FOR SUMMARY
JUDGMENT- 16